TRINA A. HIGGINS, United States Attorney (#7349)
TYLER MURRAY, Assistant United States Attorney (#10308)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>NAN MA,<br><br>  Defendant. | Case No. 4:20-CR-107<br><br>**UNITED STATES' OPPOSITION TO NAN MA'S MOTION FOR COMPASSIONATE RELEASE**<br><br><br>Judge Robert Shelby<br><br>Magistrate Judge Paul D. Kohler |

The United States respectfully submits this opposition to defendant Nan Ma's Motion for Compassionate Release.

## I.  INTRODUCTION AND FACTUAL SUMMARY

For years, defendant Nan Ma engaged in a complex scheme that defrauded his employer of $2.5 million.  This betrayal was financially devastating to his employer, and the financial devastation was matched by the personal betrayal felt by his co-workers who had opened their homes and hearts to help Ma and his family transition to life in the United States.  Ma's employer helped Ma get established here and gave him a position of trust within the company.

Ma violated that trust and used it to enrich himself.  For years, Ma stood by and watched his friends struggle to maintain their business while he was enriching himself to their detriment.

Ma's scheme came to an end in September 2020 when agents searched his home and arrested him.  Ma ultimately agreed to plead guilty to an information charging his failure to file a Currency and Other Monetary Instruments Report, but he also explicitly agreed that that the Court could consider all the facts and circumstances of his crimes—including his schemes to enrich himself at the expense of his employer—in determining the appropriate sentence. Moreover, Ma had accumulated significant assets, including several pieces of real estate, from his crimes.  He agreed to forfeit these assets so these assets could be used to pay restitution to his employer and pay the taxes he owes to the IRS.

The Court sentenced Ma to 33 months of imprisonment and 36 months of supervised release.  He reported to prison on July 15, 2022.  Only three months later, Ma sought a compassionate release from the prison warden, claiming that his new girlfriend was pregnant with twins and because of health complications with the twins and her inability to speak English, she needed his help.  He now seeks a compassionate release from this court.

## II.     ARGUMENT

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed; but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011) (citation and internal quotation marks omitted).

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), provides one such exception.  To determine whether to grant compassionate release under this statute, Courts must engage in a three-step analysis.  First, "a district court must find whether extraordinary and

2

compelling reasons warrant a sentence reduction." *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (brackets and quotation marks omitted). Second, "a district court must find whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*[1] Third, the district court must "consider any applicable [18 U.S.C] § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Id. See also United States v. Hald*, 8 F.4th 932, 937-38 (10th Cir. 2021). A district court must deny compassionate release when any one of the three is lacking, and may only grant compassionate release after addressing all three steps. *McGee*, 992 F.3d at 1043 (citations omitted).

## A. Ma has not demonstrated extraordinary and compelling reasons for compassionate release.

Ma contends that he should be released from prison because his girlfriend gave birth prematurely to twins and she cannot speak English. Motion for Compassionate Release, ECF No. 88, 3-4. He further claims that she has been "living off previous savings to be able to care for the twins" but this will not last forever (though he gives no estimate as to the amount of these savings or how long they are expected to last). *Id.* According to Ma, he could help his girlfriend translate and could get a job to help provide support.

These circumstances do not present "extraordinary or compelling" reasons that would justify allowing Ma to leave prison after serving only about 10 months of a 33 month sentence.

---

[1] The Sentencing Commission has not yet issued a policy statement "applicable" to § 3582(c)(1)(A) motions filed by a defendant. Accordingly, § 3582(c)(1)(A)'s consistency requirement does not currently affect this court's discretion to consider whether extraordinary and compelling reasons warrant a sentence reduction. *United States v. Maumau*, 993 F.3d 821, 832, 836-37 (10th Cir. 2021). As a result, the United States will not address the consistency requirement in this opposition.

While it is understandable that Ma would like to be at home with his girlfriend to help care for the children and help her translate, there is no indication that he is her only source of support or translation. Ma's girlfriend appears to be a capable and resourceful adult. She has come to this country with two teenaged children and established a home and a life. Ma has provided no details as to the extent of her savings, but she presumably has had enough to support herself and her family for an extended period of time. And she appears to have obtained these resources without any help from Ma. In any event, given that Ma met her after his indictment and after his scheme stopped, it appears that Ma has not been a significant source of her financial support.

And there is no indication that Ma would be the only way she could get help translating or caring for the twins—she was able to navigate the language barrier before she met Ma, and she has presumably been able to do it since he reported to prison. Ma does not explain why other family members, friends, social service, or community programs would be inadequate to help her care for the twins or help her translate. In short, while it may be more convenient for Ma to be out of prison to help with the twins, he has not established that he is the only person available to help. Under these circumstances, there is no extraordinary and compelling reason for a compassionate release. *See, e.g., United States v. Martinez*, Case No. 10-cr-233S (1), 2022 WL 1089671 at * (W.D. N.Y. April 12, 2022) (denying compassionate release where defendant failed "establish that no alternative sources of care are available, including other family and friends or social service and community programs."); *see also United States v. Rollins*, 19-CR-34S, 11-CR-251S, 2021 WL 5445772, at *4 (W.D.N.Y. Nov. 22, 2021) (denying compassionate release to defendant who was the preferred, but not only, available caregiver); *United States v. Wilson*, 10-CR-363S (1), 2021 WL 2327312, at *3-5 (W.D.N.Y. June 8, 2021) (denying compassionate release, in part, due to defendant's failure to demonstrate that he was mother's only available

caregiver); *United States v. Pabon*, 17 Cr. 312 (JPC), 2021 WL 603269, at *4 (S.D.N.Y. Feb. 16, 2021) (denying compassionate release for, among other reasons, defendant's failure to show that he was wife's only available caretaker); *United States v. Lindsey*, No. 13-CR-271-LTS, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (denying sentence reduction on basis that defendant failed to show that no other family member or other caretaker could provide the necessary care).

Ma cites two cases in support of his motion. Neither justify his request for compassionate relief. He first cites *United States v. England*, Case No. CR18-61-GF-BMM, 2020 WL 4004477 (D. Mt. July 15, 2020). Unlike here, that case involved a defendant who, during the coronavirus pandemic, had a documented history of respiratory issues and was scheduled to be released to home confinement in a month. The defendant also had a child at home with significant health issues. While the court acknowledged that caretakers of the child were potentially incapacitated because of their need to take off work to care for the child, the primary reason for granting compassionate release was to avoid the potential for the defendant to contract Covid-19 in prison and then bring it home to the family, including the sick child. *Id.* at *2. That circumstance does not exist here.

Defendant also cites *United States v. Daham*, Case No. 2:17-cr-60-DBH-01, 2021 WL 279971 (D. Me. January 1, 2017). In that case, the defendant had served all but two months of his sentence, and his younger brother, the person who had been helping care for his family, died in a tragic accident. *Id.* at *1. Given the loss of the brother, the health issues endured by his wife and parents, and his children's deteriorating well-being, the court granted his motion, allowing him to return home two months early. *Id.* at *2. Here, Ma is asking to be released after serving only about 10 months of a 33 month sentence. And while the United States

acknowledges that Ma's girlfriend faces difficult circumstances, they are not unusual, and Ma

has not demonstrated that he is the only person willing and available to help.

Because Ma has not shown an extraordinary and compelling circumstance, his motion

should be denied.

**B. The 3553(a) factors do not support a compassionate release for Ma.**

In addition, even if Ma did present an extraordinary and compelling circumstance, the 18

U.S.C. § 3553(a) factors preclude a compassionate release here.

### 1. *Nature and Circumstances of the Offense and History and Characteristics of the Defendant*

Ma is not entitled to compassionate release because, contrary to the assertion that Ma's

crime "reflected a unique situation in which Mr. Ma exhibited poor judgment" (Supplemental

Mot. in Support of Def.'s Request for a Sentencing Reduction ECF No. 91, p. 2), his crimes were

repeated, deliberate, and calculated.  As set forth in the United States Sentencing Memorandum

(ECF No. 76), Ma exploited the trust placed in him to enrich himself at his employer's expense.

Over the course of several years, he repeatedly diverted money that should have benefitted his

employer to himself.  And when his co-workers noticed the fancy cars and expensive homes he

was buying, he lied about the source of his newly acquired wealth, telling them that it came from

an early inheritance from his father.  He projected an outward appearance as a loyal, grateful

employee (going so far as to name his son after one of his employer's owners), when in truth he

was a fraud.  Mr. Ma's scheme was a massive financial and personal betrayal.  This was not a

one-time lapse in judgment, but a deliberate, calculated, and sophisticated scheme to defraud

carried out over a number of years.

What makes Ma's crimes even worse is that he committed this crime out of greed and

ego.  As argued at sentencing, though Mr. Ma's life was not free of challenges, none of these

challenges were extraordinary.  More importantly, he had a largely supportive family life, and he appears to have grown up without a history of abuse or neglect.  His parents sacrificed for him, and he was educated at fine institutions in England and Scotland.  Using that education, and the connections that came from it, he was able to get a well-paid professional job here in the United States.  He was able to buy a home and start a family.  He had a bright future.  In other words, Mr. Ma had advantages in life that many people only dream of.  His background is free from the desperate addiction, oppression, or economic deprivation that can sometimes drive criminal behavior.  Instead, Ma appears to have committed his crime to satisfy his greed, personal ambition, and ego.

Accordingly, a compassionate release, particularly when Ma has served only a few months of his sentence, would fail to account for the nature and circumstances of his offense or his favorable personal circumstances.

**2. The need for the sentence imposed to: (a) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (b) afford adequate deterrence to criminal conduct; (c) protect the public from further crimes of the defendant;  (d)  provide the defendant with needed educational or vocation training, medical care, or other correctional treatment in the most effective manner.**

Moreover, a compassionate release would fail to account for the seriousness of Ma's offense, promote respect for the law, or provide him with a just punishment.  Ma committed his crime over the course of several years, and he secured himself about $2.5 million in ill-gotten gains—more than most people make in decades of work.  He stood by as his co-workers struggled to make their business work, wondering why they could not meet their cash needs, while he was pocketing that money.  Moreover, Ma received the benefit of a negotiated plea agreement, and he was sentenced within the agreed-upon range.  Allowing him a further reduction would not be just.  His actions caused serious harm, and a compassionate release would fail to account for this and would be an affront to the people he victimized with his crime.

Moreover, though Ma appeared contrite at his sentencing hearing, he does not appear to have learned the lesson from what he has done. His first asked for a compassionate release after only three months in prison. ECF No. 88, Exhibit D. His motion minimizes his conduct and asserts that he has paid restitution. ECF No. 88, p. 8. The reality is that Defendant did nothing more than agree that his ill-gotten gains could be forfeited so that the forfeited assets could be applied to restitution. He has paid nothing out of pocket toward restitution. He just gave up the assets he bought with criminal proceeds. He simply does not appear to appreciate the seriousness of what he has done or the harm he has caused. He needs to stay in prison to ensure a just punishment and deter him from future criminal conduct.

In addition, a compassionate release would fail to adequately deter other wrongdoers. If Ma's motion is granted, the public would see that someone could steal millions, and then be released after only a few months in prison. This would feed the impression that white collar criminals are treated more leniently than other criminals. Ma's background and education mean that he is more culpable for his crimes, not less, and the public should be assured that there is no sentencing discount for white collar defendants. As the Seventh Circuit explained:

> [N]o "middle class" sentencing discounts are authorized. Business criminals are not to be treated more leniently than members of the "criminal class" just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity. It is natural for judges, drawn as they (as we) are from the middle or upper-middle class, to sympathize with criminals drawn from the same class. But in this instance we must fight our nature. Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.

*United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999).

Both Ma and others need to be deterred from further crimes.  A compassionate release for Ma will not meet that goal.  In short, the 18 U.S.C. § 3553(a) factors do not support a compassionate release for Ma.

### III.    CONCLUSION

Ma has served only about 10 months of a 33-month sentence.  He has not demonstrated an extraordinary and compelling circumstance that would warrant his release.  And the 18 U.S.C. § 3553(a) factors require that he stay in prison so that his sentence will reflect the serious nature of his crime, ensure a just punishment, and deter Ma and others from committing similar crimes. His motion for compassionate release should be denied.

TRINA A. HIGGINS
United States Attorney


/s/ *Tyler Murray*_____
Tyler L. Murray
Assistant United States Attorney